THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
LETHA MILLER,                      )
                                                Case No. 1:06CV00067 DS
                                   )
         Plaintiff,
                                   )
      vs.                                       MEMORANDUM DECISION
                                   )
UNUM LIFE INSURANCE COMPANY
OF AMERICA                         )

                                   )
         Defendant.
                                   )
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

This matter is before the court to address the following pending motions: Defendant's Motion for Summary Judgment (Docket No. 27), filed on August 13, 2008, and Plaintiff's Cross-Motion for Summary Judgment (Docket No. 32), filed on August 21, 2008.

**I. Background**

This is a case arising under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiff Letha Miller filed suit on June 15, 2006, alleging that Unum Life Insurance Company of America ("Unum") wrongly denied long-term disability benefits for which she qualified under a disability insurance policy provided by Unum. *See* Complaint at 2. Miller was injured in a car accident on January 15, 2002, and continued working for more than a year until February 2, 2003. AR at UACL00018. Twenty months after the accident, Miller filed a disability claim with Unum on September 4, 2003. AR at UACL00036. Unum reviewed medical reports submitted by Miller indicating that she could not lift heavy objects or stand for long periods of time. AR at UACL00216-18, UACL00229. Since these restrictions prevented Miller from performing the duties of her regular occupation, Unum concluded that she was disabled according

to the policy definition for short-term disability and agreed to pay disability benefits for 24 months pursuant to the policy agreement. AR at UACL00047; UACL000230-38.

After paying Miller short-term disability benefits for 25 months, Unum reevaluated her condition pursuant to the "long term" definition of disability that applies after the first 24 months of coverage. The new definition required that Miller's injury prevent her not only from performing the duties of her regular occupation, but also "the duties of **any gainful** occupation for which [she] is] reasonably fitted by education, training or experience." AR at UACL00047 (emphasis in original). Relying on an Estimated Functional Abilities Form ("FA") provided by Miller's neurologist, Dr. Arif Chowdhury, on October 22, 2004, *see* AR at UACL00375, Unum conducted a vocational review identifying several gainful occupations Miller could pursue within the physical constraints of her injuries. AR at UACL00211-214. On November 8, 2004, Unum notified Miller of the new standard for long-term disability coverage that would apply after August 5, 2008.

After Unum provided Miller with the new definition for long-term disability coverage, her treating physician abruptly changed his prognosis: "[Ms. Miller] is unable to work due to this chronic pain and episodic weakness. I believe that she has reached maximum medical improvement, and that she will not improve sufficiently to be able to return back to work." AR at UACL00410 (dated January 18, 2005). Just three months prior, however, Dr. Chowdhury indicated that Miller could frequently bend, kneel, crawl, climb stairs, reach above her shoulders, and lift up to 15 pounds. He also indicated that her return to work was an ongoing focus of the treatment plan. AR at UACL00375. When Unum inquired about the sudden change in Miller's prognosis, Dr. Chowdhury declined to provide additional information about her functional abilities and stated only that "[Miller] has reached maximum medical improvement and given her status, I think she

will not improve any further to be able to return back to work." AR at UACL00418 (dated January 26, 2005). Unum also learned that Dr. Chowdhury had only seen Miller twice in the preceding year, that no diagnostic tests had been performed since January of 2004, and that Dr. Chowdhury's diagnosis was based entirely on Miller's complaint of chronic back pain. AR at UACL00427 (dated February 22, 2005).

Relying on all medical records produced by Miller and her physicians, Unum initiated a review by two medical doctors—Woolson M. Doane, M.D., and Charles Sternbergh, M.D.—to determine whether "the restrictions and limitations for no work [are] reasonable and supported on objective medical records." Dr. Doane concluded that the no-work restrictions were not reasonable, noting, *inter alia*, that Dr. Chowdhury observed only mild discomfort with flexion of the neck and shoulders; that Miller had normal general, neurological and physical therapy evaluations in 2002; and that after 31 physical therapy treatments, Miller was discharged with good resolution of her hip and back pain, had better range motion of the lumbar spine, could lift up to 40 pounds from the floor to her waist, and could walk a treadmill and ride a stationary bike for 15 minutes each. AR at UACL00447-51. In his subsequent review of the file, Dr. Sternbergh concurred with Dr. Doane's findings. AR at UACL00497-98. Pursuant to the reviewing doctors' findings, Unum notified Miller on October 28, 2005, that it would not provide long-term disability compensation—beyond the initial 24-month benefit—and provided a vocational referral identifying several jobs in Miller's locale that comported with her physical restrictions and offered pay commensurate with her prior occupation. AT at UACL00520-21.

Miller appealed Unum's decision and provided additional records from Dr. Chowdhury for Unum's consideration. AR at UACL00555-61. These records included complaints from Miller of

dizziness and back pain, a recent MRI report indicating bone spurs in the cervical spine, AR at UACL00593-94, and Dr. Chowdhury's conclusion that "[Miller] seems to be holding on steadily and without any worsening of her symptoms and rather some minor improvement," AR at UACL00559 (emphasis added).

To process Miller's appeal, Unum submitted the updated file to Charles J. Lancelotta, Jr., M.D. P.A., for independent, outside review. Dr. Lancelotta concluded that "nothing in the medical records . . . would document any reason that Ms. Miller would have specific restrictions and limitations beyond August 7, 2005 other than the fact that she has a chronic pain problem," AR at UACL00626-27, and that Miller should be able to work in a sedentary capacity as long as she was afforded reasonable breaks every one or two hours, AR at UACL00638.

After notifying Miller that its decision not to continue disability benefits would be affirmed, Miller retained Randall W. Richards, Esq., to pursue an additional appeal. Mr. Richards submitted to Unum on March 8, 2006, an updated assessment from Dr. Chowdhury indicating substantially higher physical restrictions, including limitations on Miller's ability to sit or stand at 45 minutes, her ability to walk at 30 minutes, her ability to lift at only 5 pounds, and added a requirement that she lay down every two hours. AR at UACL00652. Unum attempted to contact Mr. Richards on three separate occasions—leaving messages on voicemail or with his secretary on each occasion—to discuss the basis for Dr. Chowdhury's new assessment. Mr. Richards never returned Unum's phone calls. AR at UACL00654. Unum accordingly declined Miller's request for an additional appeal, noting that Dr. Chowdhury's evaluation included "no additional clinical office notices, medical diagnostic testing or results" to substantiate his statements. AR UACL00659-61.

## II. Standard of Review

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999).

Miller and Unum agree that the appropriate standard of review is the arbitrary and capricious standard. *See Firestone Tire & Rubber Co. v. Brunch*, 489 U.S. 101, 109 (1989) (explaining that a denial of benefits under ERISA should be reviewed "under a *de novo* standard ***unless*** the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan") (emphasis added); *Charter Canyon Treatment Ctr. V. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998) (explaining that the appropriate standard of review of an administrator's actions in an ERISA benefits appeal is ***arbitrary and capricious*** "if the plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the plan's terms") (emphasis added).

This standard of deference is tempered, however, when the claims administrator exercises discretion under a conflict of interest, such as when the administrator deciding eligibility for disability benefits also funds the benefits program. As the U.S. Supreme Court recently explained, "'[i]f a benefit gives discretion to an administrator or fiduciary who *is operating under a conflict of interest*, that conflict must be *weighed as a factor* in determining whether there is an abuse of discretion.'" *Metropolitan Life Ins. Co. v. Glenn*, 128 S.Ct. 2343, 2357 (2008) (quoting *Firestone*, 489 U.S. at 115) (Court's emphasis).

Clarifying the *Firestone* standard, the Court instructed:

> "We do not believe that *Firestone* . . . implies a change in the *standard* of review, say, from deferential to *de novo* review. . . . Neither do we believe it necessary or desirable for courts to create special burden-of-proof rules, or other special procedural or evidentiary rules, focused narrowly upon the evaluator/payor conflict. In principle, as we have said, conflicts are ***but one factor among many*** that a reviewing judge must take into account."

*Glenn*, 128 S.Ct. at 2351 (emphasis added).

To incorporate the conflict of interest factor, the Tenth Circuit crafted a "'sliding scale approach' where the 'reviewing court will always apply an arbitrary and capricious standard, but [will] decrease the level of deference given . . . in proportion to the seriousness of the conflict.'" *Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1010 (10th Cir. 2008) (quoting *Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co.*, 491 F.3d 1180, 1190 (10th Cir. 2007)). Since Unum is both the disability insurer and the plan administrator, the company's conflict of interest will be weighed as a factor in determining the reasonableness of the benefits denial. *See Weber*, 541 F.3d at 1011.

Finally, "in reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record – the materials compiled by the administrator in the course of making his decision." *Id.* (internal citations omitted). Thus, the court will only consider evidence before Unum at the time of its decision and which is contained in the administrative record.

**III.  Reasonableness of Unum's Decision to Deny Continuing Disability Benefits**

When a court reviews under the arbitrary and capricious standard, "'[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [his] knowledge to counter a claim that it was arbitrary or capricious.'" *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (quoting *Woolsey v. Marion Laboratories*, *Inc.*, 934 F.2d 1452, 1460 (10th Cir. 1991)). Therefore, the reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end." *Id.* (internal citations omitted).

Miller asserts that Unum's denial was arbitrary and capricious because it ignored substantial evidence of Miller's pain and disability. The record demonstrates, however, that Unum took sufficient care in evaluating the medical records submitted for evaluation. First, Unum accepted the recommendations of Miller's doctors that she not stand for long periods of time or lift heavy objects—which thus prevented her from performing the "material and substantial duties of [her] regular occupation" as an order picker in a warehouse—and accordingly paid disability benefits for more than 25 months.

Second, when Unum reevaluated Miller's condition pursuant to the definition of disability that applies after the first 24 months—requiring that the disability prevent her from performing the duties of "any **gainful occupation** for which [she is] reasonably fitted by education or experience"—it afforded Miller a "full and fair" review by actively soliciting updated information and subjecting the records to the scrutiny of no fewer than three medical doctors. *See Firestone,* 489 U.S. at 113. When Miller's files were repeatedly submitted for medical review, moreover, Unum did not "cherry pick" which records to include. *See Smith v. Reliance Std. Life Ins. Co.*, 322

F.Supp.2d 1168, 1177 (D. Colo. 2004). Indeed, two Unum physicians, Dr. Woolson M. Doane, an expert in internal medicine, and Dr. Charles Sternbergh, a neurosurgeon, reviewed all medical records, employment information, and other documents compiled by Unum and concluded that the limitations prescribed by Miller's doctors (i.e., not standing or sitting for extended periods and not lifting more than 15 pounds) did not prevent her from obtaining a sedentary occupation.

Although Miller's treating neurologist, Dr. Chowdhury, provided an updated report indicating that she "is unable to work due to chronic pain and episodic weakness" and "has reached maximum medical improvement," AR at at UACL00410, these findings contradicted previous prognoses from Dr. Chowdhury and other treating physicians and therapists. In addition, despite repeated requests, Unum was never provided with documentation of clinical or medical diagnostic testing to substantiate these revised findings, nor a detailed assessment of Miller's functional ability, restrictions, or limitations.

Finally, Unum complied with the Tenth Circuit's strong suggestions that administrator's operating under a conflict of interest undertake an independent evaluation before denying benefits. *See Fought v. Unum Life Ins. Co. of America*, 379 F.3d 997, 1015 (10th Cir. 2004) (noting that, while not required, "[s]eeking independent expert advice is evidence of a thorough investigation") (internal citations omitted). Unum accordingly submitted Miller's complete file to Charles J. Lancelotta, Jr., M.D., P.A., for independent, outside review. Dr. Lancelotta concluded that "nothing in the medical records . . . would document any reason that Ms. Miller would have specific restrictions and limitations beyond August 7, 2005 other than the fact that she has a chronic pain problem," AR at UACL00626-27, and that Miller should be able to work in a sedentary capacity as long as she was afforded reasonable breaks every one or two hours, AR at UACL00638.

Given the extent to which Unum subjected Miller's complete medical file to professional review, as well as the efforts it undertook to obtain additional information from Miller's treating physician to support his prognosis of complete vocational disability, Unum's decision to deny continuing disability benefits was not unreasonable. Though it may not be the only logical conclusion, the denial is "sufficiently supported by facts within [Unum's] knowledge," and clearly falls on the continuum of reasonableness. *Kimber*, 196 F.3d at 1098.

## IV.  Conclusion

Accordingly, for the reasons stated and other good cause shown, the court hereby grants Defendant's Motion for Summary Judgment (Docket No. 27), and denies Plaintiff's Cross-Motion for Summary Judgment (Docked No. 32).

SO ORDERED.

DATED this 11th day of March, 2009.

BY THE COURT:

_____
DAVID SAM
SENIOR JUDGE
UNITED STATES DISTRICT COURT